## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WHISPELLS FOREIGN CARS, INC., | ) |
| JESSE AND VIRGINIA T. ABRAMS, | ) |
| LAWRENCE C. ALTON, | ) |
| BAMA SEA PRODUCTS, INC., | )  Chief Judge Emily C. Hewitt |
| CONNIE and JAMES HOWARD BATTON, | ) |
| BILLIE JAMES and LAURA E. DONALD, | )  No. 09-315 L |
| VITO C. FARESE, | ) |
| RONALD HENDRIEX, | ) |
| JOHNSTON PROPERTY, LLC, | ) |
| LABAR ENTERPRISES, INC., and LARRY J. RITZENTHALER, as successor to LABAR ENTERPRISES, INC., a dissolved Florida corporation, | ) |
| PETER DENNE PROPERTY HOLDINGS, INC., | ) |
| JOEL M. SAMON and JARED M. SAMON, and | ) |
| SBJ RESCH FAMILY PARTNERSHIP LTD, | ) |
| Plaintiffs, | ) |
| vs. | ) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

## SECOND AMENDED COMPLAINT

COME NOW Whispells Foreign Cars, Inc., Jesse and Virginia T. Abrams, Lawrence C. Alton, Bama Sea Products, Inc., Connie and James Howard Batton, Vito C. Farese, Billie James and Laura E. Donald, Ronald Hendriex, Johnston Property, LLC, LaBar Enterprises, Inc., and

**EXHIBIT 1**

Larry J. Ritzenthaler, as successor to LaBar Enterprises, Inc., a dissolved Florida corporation, Peter Denne Property Holdings, Inc., Joel M. Samon and Jared M. Samon, and SMJ Resch Family Partnership Ltd., and for their Amended Complaint state as follows:

## SUMMARY OF THIS CASE

Plaintiffs are citizens of the United States and the State of Florida. Plaintiffs own a fee simple estate in land in Pinellas County, Florida. A railway line, formerly operated by CSX Transportation, Inc. ("CSX"), once crossed the Plaintiffs' land. The railway line that crossed the land owned by the Plaintiffs is part of a railway line originally established in the late 1800s by the Orange Belt Railway Company, Sanford and St. Petersburg Railway Company, and Tampa & Gulf Coast Railroad Company. The railroad had only an easement to use this strip of land for the operation of a railroad. Railroad use of this strip of land has now been abandoned. Under Florida law, the Plaintiffs would hold unencumbered fee simple title to their property.

On June 18, 2004, however, the federal Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") for 1.85 miles of the line pursuant to Section 8(d) of the 1983 Amendments to the federal National Trails System Act, 16 U.S.C. §1247(d) ("Trails Act"). The issuance of a NITU by the STB operated to: (a) forestall or preclude the Plaintiff property owners' "reversionary"[1] right to their property; and (b) impose

---

[1] We use the term "reversionary" in the generic sense used by this Court. "We note in passing that as a matter of traditional property law terminology, a termination of the easements would not cause anything to 'revert' to the landowner. Rather, the burden of the easement would simply be extinguished, and the landowner's property would be held free and clear of any such burden." *Toews v. United States* 376 F. 3d 1371, 1376 (Fed. Cir. 2004). In *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) (*Preseault II*), the Federal Circuit noted:

> There is an alternative way, frequently used today including by the parties here, to describe property transactions involving easements. Instead of calling the property owner's retained interest a fee simple burdened by the easement, this alternative labels the property owner's retained interest following the creation of an easement as a 'reversion' in fee. Upon the termination, however achieved, of

2

two new easements upon Plaintiffs' land, one for a public-access recreational trail and a second, perpetual easement allowing the STB to authorize a railroad to build a new rail line across this land without paying compensation to the land owners.

Pursuant to the June 18, 2004, NITU and the Trails Act, Pinellas County and the Trust for Public Land (a San Francisco not-for-profit corporation) entered into negotiations with CSX for acquisition of an easement for a public-access recreational trail to be located across the land upon which the abandoned rail line had been located. CSX did not own or possess any right to grant the Trust for Public Land and Pinellas County an easement across the Plaintiffs' land.

The denial of these Florida landowners' "reversionary right" to their land and their right to use, enjoy, and possess their property and to exclude others from their land, as well as the

---

the easement, the 'reversion' is said to become fully possessory; it is sometimes loosely said that the estate 'reverts' to the owner.

Under traditional common law estates terminology, a 'reversion' is a future interest remaining in the transferor following the conveyance of certain lesser estates to a transferee, typically when the transferee takes a possessory estate of freehold, for example a life estate. An easement is not such a possessory estate of freehold. Traditional characterization describes an easement as a 'use' interest, sometimes an 'incorporeal hereditament,' but not a 'possessory' interest in the land. Therefore labeling the retained interest a 'reversion' is not consistent with the traditional classification scheme, which views the retained interest as a present estate in fee simple, subject to the burden of the easement.

Be that as it may, whether the property owner's retained interest following the conveyance of an easement is denominated a fee simple estate or a reversion, it is uniformly treated at common law as a vested estate in fee. Under either characterization the result upon termination of the easement is the same. For consistency we use the traditional terminology which recognizes that the transferor remains seised of the freehold estate, and thus labels the owner's estate as a fee simple, burdened, during the life of the easement, by the easement-holder's rights.

*Id.* at 1533-34.

imposition of a new easement for a public-access recreational trail and the creation of a new, perpetual easement for a possible future railroad corridor across the Plaintiffs' property, is a taking of the Plaintiffs' property for which the Fifth Amendment to the U.S. Constitution requires the United States to pay "just compensation." However, the United States has not paid, nor has the Federal Government even offered to pay, any compensation to the Plaintiffs.

This claim is filed in this Court pursuant to the Fifth Amendment to the United States Constitution and the Tucker Act, 28 U.S.C. § 1491 *et. seq.*, seeking "just compensation" for the value of their property taken from them by the federal government through operation of the Trails Act. The "just compensation" they seek includes compensation for the value of the property taken, the delay between the date their property was taken (or made subject to the Trails Act), and when the federal government ultimately pays them compensation. They also seek the government to pay their attorneys' fees and expenses incurred in bringing this action pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c)(2000).

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491 *et. seq.* ("Tucker Act") because this action presents a claim against the United States, which is founded upon the Constitution and statutes of the United States.

## STATUTES AND CONSTITUTIONAL PROVISIONS

2. Plaintiffs' claims are governed by the following statutes and constitutional provision:

3. The Fifth Amendment to the United States Constitution, which provides, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

4.     The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act") states in relevant part, "such interim [trail] use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."

5.     The Tucker Act, 28 U.S.C. § 1491 *et. seq.* which states in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

6.     The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) (2000), which provides the federal government is obligated to pay landowners from whom the government takes land, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

### STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

**A.     The Named Plaintiffs:**

(i)     Whispells Foreign Car, Inc.

7.     Whispells Foreign Car, Inc. is a Florida corporation in good standing in the State of Florida and a citizen of the United States.

8.     Whispells Foreign Car, Inc. is a family automotive service business owned and operated by Seldon and Viola Whispell.

9.     On October 28, 1981, the Whispells acquired fee title to property in Pinellas County, Florida by that warranty deed recorded in the Pinellas County Recorder of Deeds' Office at O.R. 5274, Page 533 on November 18, 1981. (A copy of the warranty deed by which the Whispells acquired their property is attached as "Exhibit A.")

10. The Whispells's property includes land underlying the former CSX rail line that is subject to the STB's NITU issued June 18, 2004. (*See* Pinellas County Tax Assessor's Records, showing the Whispells's ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit B.")

11. On June 18, 2004, Whispells Foreign Car, Inc. was fee owner of this property with Parcel Identification Number 24-31-16-18378-000-0140. *See* Exhibits A and B.

(ii) <u>Jesse and Virginia T. Abrams</u>

12. Jesse and Virginia T. Abrams are citizens of the United States and the State of Florida.

13. On August 16, 1983, the Abrams acquired fee title to property in Pinellas County, Florida by that Warranty Deed recorded in the Pinellas County Recorder of Deeds' Office at O.R. 5643, Page 1960. (A copy of the Warranty Deed by which the Abrams acquired their property is attached as "Exhibit C.")

14. This property includes land underlying the former CSX rail line that is subject to the STB's NITU issued June 18, 2004. (*See* Pinellas County Tax Assessor's Records, showing the Abrams's ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit D.")

15. On June 18, 2004, the Abrams were fee owners of this property with Parcel Identification Number 23-31-16-24138-015-0100. *See* Exhibits C and D.

(iii) <u>Lawrence C. Alton</u>

16. Lawrence C. Alton is a citizen of the United States and the State of Florida.

17. On October 4, 1989, Mr. Alton acquired fee title to property in Pinellas County, Florida by that Indenture recorded in the Pinellas County Recorder of Deeds' Office at Book

7103, Page 1573. (A copy of the Indenture by which Mr. Alton acquired his property is attached as "Exhibit E.")

18. This property includes land underlying the former CSX rail line that is subject to the STB's NITU issued June 18, 2004.

19. On June 18, 2004, Mr. Alton was fee owner of this property with Parcel Identification Number 24-31-16-29718-021-0070.

20. Mr. Alton subsequently conveyed this property to Joseph A. and Lisa J. Fecera on January 3, 2005. (A copy of this Warranty Deed from Mr. Alton to Mr. and Mrs. Fecera is attached as "Exhibit F.")

(iv) <u>Bama Sea Products, Inc.</u>

21. Bama Sea Products, Inc. ("Bama") is a Florida corporation in good standing in the State of Florida and a citizen of the United States.

22. On September 1, 1998, Bama acquired fee title to property in Pinellas County, Florida by that Special Warranty Deed recorded in the Pinellas County Recorder of Deeds' Office at Book 10225, Page 1491. (A copy of the Special Warranty Deed by which Bama acquired its property is attached as "Exhibit G.")

23. Bama's property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004. *See* Pinellas County Tax Assessor's Records, showing Bama's ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit H.")

24. On June 18, 2004, Bama was fee owner of this property with Parcel Identification Number 26-31-16-38053-001-0010. *See* Exhibits G and H.

(v)    Connie and James Howard Batton

25.    Connie and James Howard Batton are husband and wife and citizens of the United States and of the State of Florida.

26.    On October 21, 2003, the Battons acquired fee title to property in Pinellas County Florida by that warranty deed recorded in the Pinellas County Recorder of Deeds' Office at Book 13174 Page 1339 on October 28, 2003. (A copy of the warranty deed by which the Battons acquired their property is attached as "Exhibit I.")

27.    The Battons operate a family automotive business on their property, which is known as Red's Auto & Equipment.

28.    The Battons' property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004. *See* Pinellas County Tax Assessor's Records, showing the Battons' ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit J."

29.    On June 18, 2004, the Battons were fee owners of this property with Parcel Identification Number 24-31-16-44191-012-0100. *See* Exhibits I and J.

(vi)   Billie James and Laura E. Donald

30.    Billie James and Laura E. Donald are citizens of United States and the State of Florida.

31.    On May 13, 1996, the Donalds acquired fee title to property in Pinellas County, Florida by that Quit Claim Deed recorded in the Pinellas County Recorder of Deeds' Office at Book 9343, Page 839 on May 15, 1996. (A copy of the Quit Claim Deed is attached as "Exhibit K.")

32.    This property includes land underlying the former CSX rail line that is subject to the STB's NITU issued June 18, 2004.

33. On June 18, 2004, the Donalds were fee owners of this property with Parcel Identification Number 23-31-16-38628-007-0090.

34. The Donalds subsequently conveyed this property Pinellas Properties, Inc. on February 4, 2005. (A copy of this Warranty Deed from the Donalds to Pinellas Properties, Inc. is attached as "Exhibit L.")

(vii) <u>Vito Farese</u>

35. Vito Farese is a citizen of the United States and the State of Florida.

36. On February 11, 1969, Mr. Farese and his wife, Claire M. Farese, acquired fee title to property in Pinellas County, Florida by that Warranty Deed recorded in the Pinellas County Recorder of Deeds' Office at OR 3014, Page 599 on February 13, 1969. (A copy of the Warranty Deed by which Mr. Farese acquired his property is attached as "Exhibit M.")

37. Mr. Farese's property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004. *See* Pinellas County Tax Assessor's Records, showing Mr. Farese's ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit N" and "Exhibit O.")

38. On June 18, 2004, Mr. Farese was fee owner of this property with Parcel Identification Numbers 24-31-16-44191-012-0030 and 24-31-16-44191-012-0050. *See* Exhibits M, N, and O.

39. Mrs. Farese has passed away.

40. Mr. Farese conveyed this property to himself, Vito Farese As Trustee of the Vito Farese Revocable Living Trust Agreement Dated April 2, 2008. (A copy of this warranty deed executed on May 19, 2008 and recorded in the Pinellas County Recorder of Deeds' Office at Book 16275, Page 1022 on June 5, 2008, is attached as "Exhibit P.")

(viii) <u>Ronald Hendriex</u>

41. Ronald Hendriex is a citizen of the United States and the State of Florida.

42. On March 11, 1993, Mr. Hendriex acquired fee title to property in Pinellas County, Florida by that Deed recorded in the Pinellas County Recorder of Deeds' Office at Book 8236, Page 130 on April 13, 1993. (A copy of the Deed by which Mr. Hendriex acquired his property is attached as "Exhibit Q.")

43. Mr. Hendriex's property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004. *See* Pinellas County Tax Assessor's Records, showing Mr. Hendriex's ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit R.")

44. On June 18, 2004, Mr. Hendriex was fee owner of this property with Parcel Identification Number 24-31-16-44191-011-0140. *See* Exhibits Q and R.

(ix) <u>Johnston Property</u>

45. Johnston Property, LLC is a Florida limited liability corporation in good standing in the State of Florida and a citizen of the United States.

46. On May 1, 1967, Lowell T. Johnston and Sheena G. Johnston acquired fee title to property in Pinellas County, Florida by that Warranty Deed recorded in the Pinellas County Recorder of Deeds' Office at Book 2595, Page 333 on May 3, 1967. (A copy of the Warranty Deed by which Mr. and Mrs. Johnston acquired their property is attached as "Exhibit S.")

47. The Johnstons' property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004.

48. On June 18, 2004, Jean G. Johnston a/k/a Shenna G. Johnston, unremarried widow and surviving spouse of Lowell T. Johnston, deceased, was fee owner of this property with Parcel Identification Number 24-31-16-44191-012-0030. *See* Exhibit S.

49. On November 7, 2006, Jean G. Johnston a/k/a Shenna G. Johnston, unremarried widow and surviving spouse of Lowell T. Johnston, deceased, conveyed this property to Johnston Property, LLC, a Florida limited liability company. (A copy of this Quit-Claim Deed by which Johnston Property acquired this property is attached as "Exhibit T.")

50. Mrs. Johnston has since passed away and her children, Michael Johnston, Lowell Johnston, and Penelope Burns, have inherited this property through the limited liability company, Johnston Property, LLC.

(x)  <u>LaBar Enterprises, Inc., and Larry J. Ritzenthaler, as successor in interest to LaBar Enterprises, Inc., a dissolved Florida corporation</u>

51. LaBar Enterprises, Inc. ("LaBar") is a dissolved Florida corporation and Larry J. Ritzenthaler, its successor in interest, is a citizen of the United States and the State of Florida.

52. On March 9, 2001, LaBar acquired fee title to property in Pinellas County, Florida by that Trustee's Deed recorded in the Pinellas County Recorder of Deeds' Office at Book 11288, Page 1342 on March 30, 2001. (A copy of the Trustee's Deed by which LaBar acquired its property is attached as "Exhibit U.")

53. This property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004.

54. On June 18, 2004 LaBar was fee owner of this property with Parcel Identification Number 24-31-16-00000-320-0300. *See* Exhibit U.

55. On November 19, 2004, Labar conveyed its interest in the property to Barla Properties, LLC, by that Quit Claim Deed recorded in the Pinellas County Recorder of Deeds'

Office at Book 13967, Page 1597 on November 30, 2004. (A copy of this Quit Claim Deed is attached as "Exhibit V.")

56. Larry J. Ritzenthaler is the President of LaBar and the Manager of Barla Properties, LLC. *See* Exhibit V.

57. Labar conveyed a Corrective Warranty Deed to Barla Properties, LLC, which was recorded in the Pinellas County Recorder of Deeds' Office at Book 16695, Page 1103 on September 11, 2009. (A copy of this Corrective Warranty Deed is attached as "Exhibit W.")

58. This Corrective Warranty Deed confirms that LaBar is now dissolved and Mr. Ritzenthaler is the sole final shareholder and successor in interest to LaBar. *See* Exhibit W.

(xi) Peter Denne Property Holdings, Inc.

59. Peter Denne Property Holdings, Inc. ("Peter Denne") is a Florida corporation in good standing in the State of Florida and a citizen of the United States.

60. On December 22, 1999, Peter Denne acquired fee title to property in Pinellas County, Florida by that warranty deed recorded in the Pinellas County Recorder of Deeds' Office at Book 10767, Page 663 on December 28, 2009. (A copy of the warranty deed by which Peter Denne acquired its property is attached as "Exhibit X.")

61. Peter Denne's property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004. *See* Pinellas County Tax Assessor's Records showing Peter Denne's ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit Y.")

62. On June 18, 2004, Peter Denne was fee owner of this property with Parcel Identification Number 23-31-16-83844-000-0010. *See* Exhibits X and Y.

(xii)   Joel M. Samon and Jared M. Samon

63.   Joel M. Samon and Jared M. Samon are citizens of the United States and the State of Florida.

64.   On March 19, 1999, Joel and Jared Samon acquired fee title to property in Pinellas County, Florida by that quitclaim deed recorded in the Pinellas County Recorder of Deeds' Office at Book 10453, Page 1422 on March 25, 1999. (A copy of the quitclaim deed by which the Samons acquired their property is attached as "Exhibit Z.")

65.   The Samons' property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004. *See* Pinellas County Tax Assessor's Records, showing the Samons' ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit AA.")

66.   On June 18, 2004, the Samons were fee owners of this property with Parcel Identification Number 23-31-16-28026-000-0010. *See* Exhibits Z and AA.

(xiii)   SBJ Resch Family Partnership Ltd.

67.   SBJ Resch Family Partnership Ltd. ("SBJ") is a Florida limited partnership in good standing in the State of Florida and a citizen of the United States.

68.   On July 10, 2002, SBJ acquired fee title to property in Pinellas County, Florida by that warranty deed recorded in the Pinellas County Recorder of Deeds' Office at Book 12110 Page 606 on July 16, 2002. (A copy of the warranty deed by which SBJ acquired its property is attached as "Exhibit BB.")

69.   SBJ's property includes land underlying the former CSX rail line that is the subject of the STB's NITU issued on June 18, 2004. *See* Pinellas County Tax Assessor's Records

showing SBJ's ownership of property abutting and underlying the former CSX rail line, attached as "Exhibit CC.")

70. On June 18, 2004, SBJ was fee owner of this property with Parcel Identification Number 23-31-16-17460-000-0030. *See* Exhibits BB and CC.

**(viii)** **How the Railroad Easement Across the Plaintiffs' Land Was Created**

71. This rail line was originally established (between 1912 and 1917) by the Orange Belt Railway Company, Sanford and St. Petersburg Railway Company, and the Tampa & Gulf Coast Railroad Company.

72. Through a series of mergers and acquisitions, the original railroads that established this railway, and which held the easement to use the Plaintiffs' land, merged into the CSX Corporation. (*See* Environmental Assessment, prepared by the STB, which is attached as "Exhibit DD." STB Docket No. AB-55 (Sub-No. 646X)).

73. Under settled Florida law, when a railroad acquires a strip of land for the construction and operation of a rail line, the railroad acquires only an easement to use the property for the purpose of operating a railroad. *See Loveland v. CSX Transp., Inc.* 622 So. 2d 1120 (Fla. App. 1993); *Davis v. MCI Telecommunications Corp.*, 606 So. 2d 734, 738 (Fl. App. 1992); and *Walters v. McCall*, 450 So. 2d 1139, 1142-43 (Fla. App. 1984).

**(ix)** **Railroad Use of the Plaintiffs' Land Was Abandoned**

74. On March 1, 2004, CSX filed with the STB a Notice of Exemption stating its intention to abandon the 1.85 mile long railway line between milepost SY 893.8 and milepost SY 895.65 in St. Petersburg, Florida. (A copy of the Petition for Exemption is attached as "Exhibit EE.")

75. In the Petition for Exemption, CSX notified the STB that "the rail patron located on the line makes minimal use of the line." *See* Exhibit EE.

76. In the Environmental Assessment, the STB stated that "only limited rail traffic has moved on the subject rail line during the past two years." *See* Exhibit DD at 2.

77. On June 18, 2004, the STB granted CSX's request to abandon railroad service over this rail line and issued an NITU authorizing Pinellas County and CSX to negotiate for trail use of the abandoned rail line pursuant to the Trails Act. (A copy of the June 18, 2004 NITU is attached as "Exhibit FF.")

78. On December 17, 2004, the STB extended the NITU to allow Pinellas County and CSX more time to negotiate a trail use agreement. (A copy of the December 17, 2004, Decision is attached as "Exhibit GG.")

79. On June 20, 2005, the STB granted another extension of time authorizing Pinellas County to continue to negotiate a trail use agreement with CSX. (A copy of the June 20, 2005, Decision is attached as "Exhibit HH.")

80. On December 9, 2005, the STB again issued an extension granting additional time for Pinellas County and CSX to negotiate a trial use agreement. (A copy of the December 9, 2005, Decision is attached as "Exhibit II.")

81. On December 22, 2005, CSX entered into a quitclaim deed with the Trust for Public Land, wherein CSX "being interested in and desiring to assist the citizens of the City of St. Petersburg for the benefit of the public in general and for the further sum of TEN DOLLARS AND NO/100 ($10.00) . . . does hereby RELEASE, REMISE and forever QUITCLAIM unto Grantee . . . a total of 13.61 acres." (A copy of the December 22, 2005 quitclaim deed is attached as "Exhibit JJ.")

82. On January 4, 2006, an attorney for CSX wrote a letter to the STB informing it that CSX had "sold" the entire 1.85 mile long rail line to the Trust for Public Land for public

recreational use. This "sale" was entered into pursuant to the NITU and the Trails Act. (A copy of the January 4, 2006, letter to the STB is attached as "Exhibit KK.")

83. Since 2006, the Trust for Public Land transferred the interest in the trail to Pinellas County, Florida, and Pinellas County has constructed a paved public-access recreational trail across the Plaintiffs' land, and a large number of the general public now use this property for various recreational uses, including skateboarding, bicycling, and walking.

(x) **The Federal Trails Act Operated To Take The Plaintiffs' and the Other Landowners' Land For Which "Just Compensation" Is Due**

84. The federal Trails Act provides that "in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use *shall not be treated, for purposes of any law or rule of law,* as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. 1247(d) (emphasis supplied).

85. But for operation of the Trails Act, the Plaintiffs would have the exclusive right to physical ownership, possession, and use of their property free of any present or future easement for recreational trail use and free of any easement for current or future railroad use.

86. Creating an easement for a current or future public access recreational trail across the Plaintiffs' land and appropriating a new easement for possible future railroad use has taken from the Plaintiffs not just the value of the land physically appropriated for this recreational trail but has also greatly diminished the value of the Plaintiffs' adjoining property.

87. The United States Constitution requires the federal government to pay "just compensation" to all those owning the land that was subject to the NITU. *Preseault v. United*

*States*, 494 U.S. 1 (1990) (*Preseault I*); *Preseault v. United States*, 100 F. 3d 1525 (Fed. Cir. 1996) (*Preseault II*); *Toews v. United States*, 376 F. 3d 1371, 1376 (Fed. Cir. 2004).

88. The easement granted to the Orange Belt Railway Company (and its successors-in-interest, including CSX) did not grant to the railroad or any other person or entity the right to use the Plaintiffs' property for a public-access recreational trail.

89. Under Florida law, when CSX's operation of a railroad over the Plaintiffs' property was abandoned, the easement was extinguished and Plaintiffs regained the right to use and possess their land free of any easement and to exclude others from their land.

90. The Trails Act allows the conversion of abandoned railroad rights of way to public-access recreational trails and burdens the land with a perpetual easement for possible future use as a railroad. The Trails Act further provides that such conversion to trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247 (d).

91. The Plaintiffs' property had never been subject to an easement allowing the public to use the Plaintiffs' property for a recreational trail.

92. The Plaintiffs' property had never been subject to a general right of the public to cross or make use of the Plaintiffs' property for any purpose.

93. Any easement for operation of a railroad across the Plaintiffs' property had been abandoned and extinguished and the Plaintiffs enjoyed, under Florida law, the unburdened right to use and occupy their land free of any present or future easement for operation of a railroad across their land and free of any easement for a public recreational trail.

94. The federal government, through operation of the Trails Act and issuance of the NITU, has: (a) forestalled, burdened, delayed, and taken from the Plaintiffs their state law

"reversionary"[2] right to their property; (b) appropriated an easement across the Plaintiffs' property for a public-access recreational trail; (c) appropriated a perpetual easement for a potential future railway across the Plaintiffs' property; and (d) taken from the Plaintiffs' (and the similarly situated landowners') rights they have under Florida law to the exclusive use and physical occupation of their land.

95.     This taking of the Plaintiffs' property occurred when the STB issued the NITU on June 18, 2004. *See Caldwell v. United States*, 391 F.3d 1226, 1236 (Fed. Cir. 2004); *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006); consolidated on appeal with *Renewal Body Works, Inc. v. United States*.

96.     The United States has neither instituted any condemnation proceeding against Plaintiffs or the other class members, nor paid, or offered to pay, the Plaintiffs or the class members for the property it has taken from them.

97.     The actions of the United States have resulted in the taking of Plaintiffs' property by reason of the direct physical taking of the Plaintiffs' land and by reason of the damage to Plaintiffs' remaining adjacent properties which have and will suffer a loss of privacy and other severance damages as a result of the proximity of the public on the adjoining trail. The remaining property is also less valuable by reason of being divided into smaller parcels by reason of the easement for trail use and possible future railroad use.

98.     The Plaintiffs' land is valuable property. It is located blocks from the Tropicana Field in downtown St. Petersburg. The taking of the Plaintiffs' reversionary interest in this land and the imposition of two new easements across their land has substantially diminished the value of their property. Not only has the Government denied them all use and possession of the strip

---

[2] *See* note 1 regarding Plaintiffs' use of the term "reversionary" or "reversion" in this Complaint. *See also, Toews v. United States*, 376 F. 3d 1371, 1376 (2004).

of land taken by the NITU, the Government's taking of this strip of land has also imposed significant damage upon the Plaintiffs' remaining adjacent property. For example, Plaintiffs have suffered significant damage to the value of their remaining land which include, *inter alia*, increased and more severe flooding caused by the public trail being constructed in a manner which increases flooding of the adjacent lands, restricted or severely limited access to their land and a substantial increase in crime due to unrestricted public-access to their property and business. Large, unsightly concrete barriers and fences have been erected along the outermost edges of the 100 foot-wide strip. These barriers significantly limit vehicular access to the remaining property and (for example in the case of the Whispell, Vito and Batton property) essentially render the remaining parcel of no or very limited value since the loss of access makes it difficult or impossible to conduct the business that has been conducted on this land for many years. The denial of vehicular access to the adjoining roads has meant these landowners, who have operated a family-owned business on their land for many years, have lost the ability to do so – or had their ability to do so severely limited.

WHEREFORE, Plaintiffs respectfully request a judgment in their favor, including:

1. Awarding Plaintiffs the full fair market value of the property taken by the United States on June 18, 2004, including any "severance damages" suffered by the Plaintiffs in loss of value to the Plaintiffs' remaining property not actually physically taken but affected by the taking;

2. Compensation for the delay between the date of the government's taking of the Plaintiffs' property and the actual date when the government finally pays "just compensation" to the Plaintiffs;

3.  Paying the Plaintiffs' costs and attorneys' fees incurred pursuant to The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654(c) (2000), which provides that Plaintiffs' are entitled to "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding;" and

4.  Such further relief as this Court may deem just and proper.

                             Respectfully submitted,

                             LATHROP & GAGE, LLP

Date: December 14, 2009      By:  /s/ Mark F. (Thor) Hearne, II
                                  Mark F. (Thor) Hearne, II
                                  Lindsay S.C. Brinton
                                  Meghan S. Largent
                                  The Equitable Building
                                  10 South Broadway, Suite 1300
                                  St. Louis, MO 63102-1708
                                  Telephone: (314) 613-2500
                                  Facsimile: (314) 613-2550

                                  thornet@ix.netcom.com
                                  lbrinton@lathropgage.com
                                  mlargent@lathropgage.com

                                  ***Attorneys for Plaintiff***

20

STLDOCS 3282689v1